**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SWA Painting, Inc., ) | CV-03-2364-PHX-DGC |
| )  Plaintiff, ) | |
| ) v. ) | **ORDER** |
| ) Golden Eagle Insurance Corporation;) Does 1-100; XYZ Corporations 1-100;) Black and White Business Entities 1-100,) ) Defendants. ) ) | |

The Court held an evidentiary hearing on October 26, 2005. Witnesses and exhibits were presented by both sides.

**A.     RULINGS AT HEARING.**

At the end of the hearing, and for the reasons stated on the record, the Court ruled as follows:

1. A *Damron* agreement was entered into between SWA Painting, Inc. and CMS in the Spring of 2002.

2. CMS's tender of a defense to Golden Eagle in the Fall of 2002 did not repudiate, rescind, or modify the *Damron* agreement.

3. Golden Eagle did not establish by clear and convincing evidence that the *Damron* agreement was the result of fraud or collusion.

4. Because a valid and binding *Damron* agreement has been entered into in this case, Golden Eagle is not entitled to a hearing on the reasonableness of the

$500,000 stipulated judgment obtained by SWA. *See Parking Concepts, Inc. v. Tenney*, 83 P.3d 19, ¶ 15 n.3 (Ariz. 2004).

5. After hearing Golden Eagle's proffer of evidence that would be presented to the Court on the question of "understandable mistake," *see Dunmore v. United States*, 358 F.3d 1107, 1112 (9th Cir. 2004), the Court concluded that the bankruptcy trustee's ratification of SWA's action in this case resolves potential standing problems raised by Defendant. See Fed. R. Civ. P. 17(a).

**B.   GOLDEN EAGLE'S COVERAGE ARGUMENT.**

On March 18, 2005, the Court held a hearing on the parties' cross-motions for summary judgment. For reasons stated in detail on the record at the hearing, the Court found that Golden Eagle's insurance policy provided coverage for SWA's claim. Specifically, the Court held that SWA had established the existence of "property damage" within the meaning of Golden Eagle's policy. The Court was unable, on the then-existing record, to determine what portions of SWA's claim were covered and whether inquiry into such coverage issues was even appropriate.

The parties have now briefed the coverage issue extensively. The Court has considered the briefing as well as the evidence presented at the hearing on October 26, 2005. As noted above, SWA and CMS entered into a valid and binding *Damron* agreement. This agreement was made at a time when Golden Eagle had declined to indemnify and defend CMS with respect to claims made by SWA. "[I]n cases where the insurer has refused to defend and the parties enter into a *Damron* agreement, the insurer has no right to contest the stipulated damages on the basis of reasonableness, but rather may contest the settlement only for fraud or collusion." *Tenney*, 83 F.3d at ¶ 15 n.3; *see also Himes v. Safeway Ins. Co.*, 66 P.3d 74, ¶ 1 n.2 (Ariz. Ct. App. 2003).

Golden Eagle argues that it may parse the $500,000 stipulated judgment in this case, showing which portions are covered and which portions are not, and even arguing as to the sufficiency of the evidence to establish damages where portions are covered. But such a procedure would be tantamount to a hearing on the reasonableness of the stipulated

judgment. Because such an inquiry is not permitted for this *Damron* agreement, and because the Court has already concluded that the Golden Eagle policy provided coverage for this claim, the Court concludes that further inquiry into the coverage issue is not appropriate.

Even if the Court were to conduct such an inquiry, however, it likely would conclude that the entire $500,000 judgment is covered. The Golden Eagle policy specifically states: "We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." Golden Eagle Insurance Contract at I(A)(1)(a). SWA presented evidence at the hearing on October 26, 2005, that the $500,000 judgment was intended to reflect both out-of-pocket expenses incurred in correcting the property damage to houses painted with faulty CMS paint, and profits lost to SWA as a result of the resources diverted to repainting the houses and the substantial loss of reputation resulting from the faulty paint jobs. SWA principal Stephen Anderson testified credibly that his lost profits resulted directly from the faulty CMS paint applied to the custom houses – that is, directly from the "property damage" the Court found to exist at the hearing on March 18, 2005. Thus, the lost profits constituted sums that CMS was legally obligated to pay SWA as "damages because of . . . 'property damage'" caused by CMS's faulty product, and therefore are covered by the insurance policy Golden Eagle issued to CMS. *See* Policy § I(A)(1)(a).

Golden Eagle argues that the evidence presented by SWA in support of the lost profits amount is defective because it reflects lost gross revenues, not lost profits. The question to be considered at this point in the litigation, however, is not whether SWA sufficiently proved lost profits, but whether lost profits are covered by the Golden Eagle insurance policy. Once the Court concludes that coverage exists, Golden Eagle is not be permitted to quibble with the amount of those profits or the proof that established them. A *Damron* agreement eliminates the insurer's ability to contest matters that might have been challenged had the insurer assumed the defense of its insured in the underlying litigation. Absent fraud and collusion, the insurer cannot challenge the reasonableness

of covered damages stipulated to in a *Damron* agreement. And as explained on the record at the end of the October 26, 2005 hearing, the Court found sufficient evidence of lost profits to overcome any suggestion by Golden Eagle that the $500,000 stipulated judgment resulted from fraud or collusion.

**C.    REMAINING LITIGATION SCHEDULE**.

The Court will hold a hearing at 4:30 p.m. on November 22, 2005 to schedule a trial in this matter. The parties are directed to meet and confer about the possibility of settling this case before a jury trial.

DATED this 31st day of October, 2005.

*David G. Campbell*
David G. Campbell
United States District Judge

- 4 -